# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-CR-32** |
| **LOUIS R. SOTO, JR.** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Over a six-year period, the defendant, Louis R. Soto, Jr., repeatedly sold shipments of used cooking oil that did not belong to him. The defendant did so for substantial financial gain, pocketing over one million dollars from the used cooking oil sales between 2017 and 2022. Moreover, the defendant requested and received payment for the cooking oil in ways that were designed to conceal both the source and the true amount of his income. Lastly, the defendant failed to report any of these proceeds as income on his federal income tax returns, causing a tax loss to the U.S. Treasury of nearly $300,000. The seriousness of these financial crimes warrants nothing less than a meaningful term of incarceration; however, a number of mitigating factors suggest that a term of imprisonment at the low-end of the applicable guidelines range may be appropriate.[1]

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).

---

[1] Absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted); *see also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

I.      **BACKGROUND**

A.      **Procedural History**

On January 20, 2026, the United States filed an Information charging the defendant with four counts of tax evasion, in violation of Title 26, United States Code, Section 7201. The information alleged that the defendant committed four counts of tax evasion through this actions and filings of his Form 1040 (U.S. Individual Income Tax Return) throughout tax years 2019, 2020, and 2022, as well as his actions and failure to file a Form 1040 in tax year 2021.

On February 19, 2026, the defendant appeared before the Honorable Mark. A Kearney, United States District Court Judge for the Easter District of Pennsylvania. The defendant waived his right to be indicted by a grand jury and pleaded guilty to all four counts in the information.

B.      **The Offense**

Between 2012 and 2022, the defendant worked as a driver of a tanker truck for a trucking company ("Trucking Company") based in Pennsylvania. PSR ¶ 9. Between 2017 and 2022, part of the defendant's job duties was to transport used cooking oil for a company ("Company-2") that hired the Trucking Company for that purpose. *Id.* The defendant's role was limited to the transportation of the cooking oil; the defendant was not authorized to sell or to retain any of the used cooking oil he was hired to transport. *Id.*

Beginning in and around 2017, the defendant began to sell the used cooking oil to a third company ("Company-3") that specialized in the recycling of used cooking oil. To do so, the defendant obtained unauthorized access to Company-2's warehouse, allowing the defendant to access Company-2's facilities outside of normal business hours without an escort. PSR ¶ 10. Moreover, the defendant failed to create proper bills of lading for the shipments. As a result of these measures, the defendant was able to steal and sell over one million dollars' worth of Company-2's used cooking oil over the next six years. *Id.*

Between 2017 and 2022, the defendant received $1,090,735.68 in payments from the third company, in exchange for the stolen used cooking oil. PSR ¶ 13. Moreover, the defendant received these payments from the third company in a variety of ways—all designed to conceal the source and the amount of his income. The defendant was frequently paid in cash. At times, the defendant deposited the cash into his bank accounts. PSR ¶ 12. Other times, the defendant simply used the cash to make significant purchases, which included: a July 18, 2017, purchase of a 2014 BMW for $15,000, PSR ¶ 16; a March 20, 2018, purchase of a 2018 Nissan Pathfinder for $30,000, PSR ¶ 20; a March 19, 2021, purchase of a 2018 Cadillac Escalade for $30,000, PSR ¶ 25; and a June 7, 2021, purchase in his wife's name of a 2021 Nissan Murano for $30,000,

3

PSR ¶ 26. In addition, the defendant gave cash proceeds to a family member to have that family member deposit the cash and then issue a certified check back to the defendant. PSR ¶ 28. The defendant event directed Company-3 to pay him by wiring money to a title company to allow the defendant to purchase two properties. PSR ¶ 29. All these actions were taken in an effort to conceal the source and the total amount of the income the defendant earned from his unauthorized sales of used cooking oil.

Having sold the used cooking oil without authorization, then having taken steps to conceal the source and the amount of the money he earned, the defendant failed to report any of these ill-gotten gains to the IRS. The defendant's acts of evasion resulted in a tax loss to the U.S. Treasury of $298,041.00.

## II.    SENTENCING CALCULATION

### A.    Statutory Maximum Sentence

#### 1.    26 U.S.C. § 7201 (Attempt to Evade or Defeat Tax) – Count One

The statutory maximum sentence for each count charged in the information is 5 years of imprisonment, a one-year period of supervised release, a $250,000 fine, and a $100 special assessment.

#### 2.    Total Maximum Statutory Sentence

In total, the defendant faces a maximum of 20 years of imprisonment, four years of supervised release, a fine of $1,000,000, and a $400 special assessment.

### B.    Sentencing Guidelines

The United States Probation Office correctly calculated the defendant's advisory sentencing guidelines range as 18 to 24 months of imprisonment.

Pursuant to Sections 2T1.1(a) and 2T.1(G) of the United States Sentencing Guidelines

Manual (USSG), the defendant is assigned a base offense level of 18 because the stipulated tax loss was $298,041. PSR ¶ 39. Under USSG §2T1.1(b)(1), the defendant is assessed a two-level increase in offense level because the defendant failed to report more than $10,000 of income in a year from criminal activity. PSR ¶ 40. This results in an adjusted offense level of 20. PSR ¶ 44. The defendant accepted full responsibility for his actions and, therefore, is entitled to a three-level reduction pursuant to USSG §§3E1.1(a) and (b). PSR ¶¶ 45-46. In addition, the defendant qualifies as a Zero-Point Offender under USSG 4C1.1, which entitles him to an additional two-level reduction. The defendant's final total offense level is 15. With an offense level of 15 and a Criminal History Category of I, PSR ¶ 51, the USSG recommends an advisory sentencing guidelines range of 18 to 24 months of imprisonment.

## III.    ANALYSIS

After the Court considers any relevant departures and the sentencing factors under 18 U.S.S.G. § 3553(a), a sentence of imprisonment at or near the bottom of the applicable guidelines range is warranted in this case.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

A.      **The Nature and Circumstances of the Offense**

The defendant's crime involved a multi-year scheme to avoid federal tax liability for the illicit income he made selling used cooking oil that did not belong to him. To carry out the scheme, the defendant made significant efforts to conceal the funds that he earned from selling the stolen cooking oil. This included accepting payments in cash, using family members to assist with the funds, and by seeking payments paid directly to a title company to purchase properties. The defendant then filed, or failed to file, Forms 1040 that did not disclose the proceeds from the cooking oil sales as income. The defendant took these steps to evade his responsibility to pay taxes on any and all income earned—an obligation that exists even when that income is earned via illegal means, as it was here. The defendant's acts of evasion resulted in a loss of nearly $300,000 to the U.S. Treasury.

6

In summary, the defendant engaged in a lengthy, multi-step scheme to earn money stealing used oil from Company-2 and then failing to pay taxes on his illicit income. He engaged in multiple and varied acts of evasion over a sustained period of time, indicating that his crime was not a one-off bad decision or brief lack of judgment, and he used the profit from his scheme to make nonessential personal purchases, including four cars. Considering the nature of the defendant's actions and the lengthy period of time over which the defendant engaged in the criminal conduct, the nature and circumstances of this crime warrant a meaningful sentence of incarceration.

**B.      The History and Characteristics of the Defendant**

The government acknowledges that there a number of mitigating factors presented here. The defendant is a 43-year-old veteran of the United States Army, who enlisted in the aftermath of September 11, 2001, and earned numerous decorations and medals for his service to the United States. PSR ¶ 80-81. Moreover, the government recognizes that the defendant is the primary caretaker of his seven-year-old son and is highly involved in the life of his daughter, who attends college locally. PSR at ¶ 64. Until recently, the defendant was also the primary caretaker of his stepson. PSR at ¶ 65. The defendant also has a lengthy history of gainful employment, albeit mostly with the Trucking Company and during which time he was engaged in the instant offense. PSR at ¶ 85. However, after parting ways with the Trucking Company, the defendant has successfully started his own small business as a long-haul truck driver. PSR at ¶ 82-83.

The defendant has fully accepted responsibility for his actions and pleaded guilty at the earliest possible opportunity. Moreover, as discussed above, this conviction represents the defendant's first contact with the criminal justice system. A sentence at or near the bottom of the guidelines appropriately accounts for the defendant's history and characteristics, when balanced

against his criminal acts.

**C.** **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

A significant sentence of incarceration is also warranted given the serious nature of the defendant's conduct and the need to provide just punishment for the offense. As set forth above, the defendant engaged a long-term scheme to profit from the sale of stolen used cooking oil and to take actions to evade the federal income tax obligations that arose from those sales. The steps taken by the defendant to distance himself from the payments from the third company demonstrate the complexity and forethought that went into the defendant's tax evasion. A sentence of incarceration, therefore, is warranted to match the nature of the crime and to serve as just punishment for the defendant's actions.

**D.** **The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant**

The sentence imposed is required to "to afford adequate deterrence to criminal conduct" by others who would commit similar offenses. 1 18 U.S.C. § 3553(a)(2); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (internal quotations omitted); *Gall v. United States*, 552 U.S. 38, 54 (2007) (noting that it is a "legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for the law"). Over the course of multiple years, the defendant took multiple actions to conceal income and to evade his federal tax obligations. A sentence at the low-end of the advisory guidelines range appropriately sends a message of general deterrence to others who seek to evade their tax obligations.

8

   E.      **The Need to Avoid Unwarranted Sentence Disparities Among Defendants**

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (citations omitted). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101. Adherence to the recommended guideline range is the only course for assuring that a defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity. In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017).

   F.      **The Need to Provide Restitution to Any Victims of the Offense**

The defendant's criminal conduct caused a tax loss of $298,041.00, which is owed as restitution to the IRS. PSR ¶¶ 33-34, 104. The government respectfully requests that this Court enter a judgement of restitution in the amount of $298,041.00, payable to the Internal Revenue Service at the following address: IRS – RACS, Attn: Mail Stop 6261, Restitution, 333 West Pershing Avenue, Kansas City, Missouri 64108.

## IV.    <u>**SUPERVISED RELEASE**</u>

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least two years is warranted. As explained above, this was a lengthy crime committed with forethought and planning. Close supervision following release from imprisonment is warranted to aid his reentry and to make sure he stays on the path of lawfulness. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). However, a full term of four years

of supervised release appears unnecessary on these facts and given the defendant's background and work history.

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3.

## V.      CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a sentence at the low-end of the guideline that accounts for the scope and severity of the defendant's criminal conduct is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Kara Traster*
KARA TRASTER
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

Michael Engle, Esq.
Mengel@Stradley.com
*Attorney for Defendant Louis R. Soto, Jr.*

/s Kara Traster
KARA TRASTER
Assistant United States Attorney

DATED:  July 28, 2026